IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Sweitzer,  :
                 Petitioner  :
   :
           v.  :   No. 847 C.D. 2020
   :   Submitted: January 22, 2021
Workers' Compensation Appeal  :
Board (Lehigh Valley Physicians  :
Group),  :
                 Respondent  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                            FILED: April 30, 2021

Barbara Sweitzer (Claimant) petitions for review of the adjudication of

the Workers' Compensation Appeal Board (Board) that terminated her workers'

compensation benefits under authority of Section 413 of the Workers' Compensation

Act (Act).[1]   In doing so, the Board affirmed the decision of the Workers'

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.  Section 413 of the Act states in pertinent part:

> A workers' compensation judge designated by the [D]epartment [of Labor and Industry] may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the [D]epartment, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed....

77 P.S. §772.

Compensation Judge (WCJ) that Claimant had fully recovered from her work injury, which was a right wrist strain. Claimant contends that the WCJ erred by not expanding the scope of her work injury and that the Board erred in affirming the WCJ. We affirm.

For eight years, Claimant was employed as an ultrasound sonographer for Lehigh Valley Physicians Group (Employer). On May 25, 2017, while performing an ultrasound, Claimant felt a pop in her right wrist. After treatment onsite, Claimant returned to work. However, Claimant continued to experience pain in her right wrist.

On August 27, 2017, Claimant had an MRI, and two days later she was examined by Paul Sibley, D.O., a board-certified orthopedic surgeon. Dr. Sibley concluded that Claimant's pain was caused by a triangular fibrocartilage complex (TFCC) tear and ulnocarpal impaction, *i.e.*, Claimant's "ulna bone was longer than her radius bone." Reproduced Record at 85a (R.R. ___). Dr. Sibley treated Claimant with steroid injections and a wrist strap. After two weeks off work, Claimant returned to work in a full-time clerical position. Two weeks later, Claimant returned to her pre-injury job. Because Claimant continued to complain of pain, Dr. Sibley recommended surgery.

On December 4, 2017, Dr. Sibley performed a wrist arthroscopy. During this procedure, he removed torn tissue from the wrist and "shave[d] down the head of the ulna to make it less prominent." R.R. 90a-91a. The surgery caused Claimant to miss work for approximately three months.

Employer accepted liability for Claimant's work injury, which its Notice of Compensation Payable (NCP) defined as a wrist strain or tear, and Employer paid Claimant disability compensation during the time she was unable to

work. When Claimant returned to work, she divided her time between doing ultrasounds and clerical work.

On August 13, 2018, William H. Kirkpatrick, M.D., a board-certified orthopedic surgeon, did an independent medical examination (IME) of Claimant. On August 31, 2018, Employer filed a petition to terminate compensation benefits, alleging that Claimant was fully recovered from her work injury as of the date of Dr. Kirkpatrick's examination.

On October 4, 2018, Dr. Sibley did a second surgery to shorten Claimant's ulna bone. Claimant has not worked since this second surgery.

On January 31, 2019, the WCJ held a hearing on Employer's termination petition. The dispute centered on the cause of Claimant's pain and whether she was fully recovered from the work injury that occurred on May 25, 2017.

Claimant testified that prior to the work injury she had no problems with her right wrist. She explained that an MRI done in 2015 related to the left side of her wrist, whereas the work injury affected the right side of her wrist. Dr. Sibley treated only the right side of the wrist. When the first surgery did not resolve Claimant's wrist pain, Dr. Sibley did the more invasive surgery in October 2018. Claimant testified that she continues to treat with Dr. Sibley for ongoing pain and is not fully recovered from her work injury.

Claimant also presented the deposition testimony of Dr. Sibley. He diagnosed Claimant with ulnar side wrist pain, caused by a TFCC tear, which he treated with a wrist arthroscopy. Dr. Sibley opined that the TFCC tear was related to the work incident because Claimant had no pain prior thereto. He also opined that

3

Claimant's second surgery related to the work injury. Because she continues to have pain, Dr. Sibley has not released Claimant to return to work.

On cross-examination, Dr. Sibley acknowledged that his report from Claimant's first surgery stated that Claimant's wrist condition could be chronic, acute or subacute. He also acknowledged that the radiologist did not report an abnormality in Claimant's right wrist after reviewing the 2015 or the 2017 MRI. Nevertheless, Dr. Sibley testified that he saw thinning of the TFCC in the 2017 MRI, which he confirmed in the surgery. Dr. Sibley explained that Claimant's variance in her ulna was congenital, *i.e.*, a pre-existing condition.

In support of its petition, Employer presented the deposition of Dr. Kirkpatrick. He testified that at his IME, he took Claimant's medical history, examined her, and reviewed her medical records. Claimant's physical examination did not show any evidence of dystrophy in her hand. Her strength was normal, and Claimant complained only of mild discomfort in her index finger when he pressed on it. Dr. Kirkpatrick opined that Claimant had fully recovered from her work injury, which was a right wrist strain. He also opined that Claimant's first surgery was not related to the work injury because the surgeon reported a "chronic" condition relating to ulnocarpal impaction of the right wrist. Notes of Testimony (N.T.), 12/6/2018, at 14-15; R.R. 237a-38a. Further, Dr. Sibley's surgical notes reported that the 2015 MRI showed cartilage changes and bony edema, which supported Dr. Kirkpatrick's diagnosis of a pre-existing condition.

The WCJ found Claimant "generally credible," except to the extent she related her current wrist pain to her work injury. WCJ Decision, 8/26/2019, at 4; Finding of Fact (F.F.) No. 7. The WCJ found Dr. Kirkpatrick's opinion more credible than that of Dr. Sibley, who admitted that Claimant's condition pre-existed

4

the work incident. Based on these findings, the WCJ granted Employer's termination petition.

Claimant appealed to the Board, and it affirmed the WCJ. The Board explained:

> [Employer] was able to meet its burden of proof because *the WCJ accepted Dr. Kirkpa[t]rick's expert medical opinion that Claimant is fully recovered, could return to work without restrictions, and had no objective medical findings that either substantiated the claims of pain or connected them to the work injury.*

Board Adjudication, 8/5/2020, at 4 (emphasis added). The Board observed that Claimant simply challenged the WCJ's decisions on credibility and the weight to assign the evidence, which matters are committed to the fact-finder. Claimant petitioned for this Court's review.[2]

On appeal, Claimant raises two issues. First, she asserts that the WCJ's finding that Claimant was fully recovered from her work injury is not supported by substantial evidence. Second, she asserts that the WCJ erred by not amending the NCP to include all of Claimant's injuries, *i.e.,* a TFCC tear and ulnocarpal impaction syndrome.

In a termination proceeding, the employer bears the burden of establishing that the work injury has fully ceased. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Further,

---

[2] This Court reviews the Board's adjudication to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *MV Transportation v. Workers' Compensation Appeal Board (Harrington)*, 990 A.2d 118, 120 n.3 (Pa. Cmwlth. 2010).

5

> [i]n a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that *there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury*. If the WCJ credits this testimony, the termination of benefits is proper.

*Id.* (footnote omitted) (emphasis added). This Court will not disturb the WCJ's findings on appeal where they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Saville v. Workers' Compensation Appeal Board (Pathmark Stores, Inc.)*, 756 A.2d 1214, 1216 (Pa. Cmwlth. 2000) (citations omitted). Further, this Court must view a substantial evidence challenge in a light favorable to the prevailing party. *Id.* at 1217. With these principles in mind, we address Claimant's arguments.

In her first issue, Claimant asserts that the WCJ's finding that she was fully recovered from her work injury as of August 13, 2018, is "totally unsupported" by substantial evidence. Claimant Brief at 12. Claimant asserts that the WCJ's findings on the expert testimony were "incomplete and inaccurate." *Id.* Accordingly, Claimant contends that Employer did not meet its burden of proof with Dr. Kirkpatrick's expert opinion.

Specifically, Claimant challenges Finding of Fact No. 5g, which states as follows:

> Dr. Kirkpatrick reviewed Dr. Sibley's report of September 19, 2018[,] in which Dr. Sibley reviewed a prior MRI done in 2015[,] before the work injury. *In comparing the two MRIs, Dr. Sibley*

6

> *noted cartilage changes and bony edema in the 2015* MRI.  This
> confirmed that the condition was preexisting.

WCJ Decision at 4; F.F. No. 5g (emphasis added).  In his progress note dated September 19, 2018, Dr. Sibley stated that a 2015 MRI showed "cartilage ... changes and bony edema on the ulnar proximal aspect of the lunate on those films, so this continues to prove the 'pre-existing nature' affirmed by her IME." N.T., 12/6/2018, Ex. 4, at 6; R.R. 303a.  This documentary evidence fully supports Finding of Fact No. 5g.

Claimant also argues that the record is clear that prior to the work injury, she worked full time and that her MRI of 2015 was normal.  After the injury, Claimant "had pain requiring medical treatment, including injections and surgery and restrictions on her ability to work."  Claimant Brief at 14.  Claimant asserts, based on these facts, that "surely a reasonable person would find that the evidence is not adequate to support a finding of full recovery."  *Id.*

Claimant seems to argue that the wrist sprain aggravated her pre-existing condition and that this aggravation constituted the work injury.  However, in his cross-examination, Dr. Sibley testified that Claimant's pre-existing condition "*could* have been exacerbated" by the work injury.  N.T., 4/5/2019, at 37; R.R. 113a.  As noted by the Board, Dr. Sibley did not "definitively" testify that Claimant's work injury consisted of an aggravation of her pre-existing condition.  Board Adjudication, 8/5/2020, at 4.  The WCJ cannot be faulted for the equivocal opinion of Dr. Sibley.

Where both parties present evidence, it is irrelevant that the record contains evidence that supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists to support the WCJ's findings. *Saville*, 756 A.2d at 1217.  Dr. Kirkpatrick opined that Claimant fully recovered

7

from the work injury and his opinion was credited by the WCJ and accepted. This Court, on appeal, cannot overturn the WCJ's credibility determinations or reweigh the evidence. *Greenwich Collieries*, 664 A.2d at 706.

Finally, Claimant argues that the WCJ erred because Employer did not prove an independent cause of her complaints, as is required in a termination proceeding. She contends that Dr. Kirkpatrick's testimony did not satisfy this burden:

> While Dr. Kirkpatrick wants this Court to believe that Claimant's conditions are degenerative, he cannot possibly expect the Court to believe that Claimant's degenerative conditions suddenly and coincidentally became symptomatic at the exact same time as the work injury.

Claimant Brief at 15. However, both Claimant's own expert and Dr. Kirkpatrick explained the independent cause for Claimant's continuing pain, *i.e.*, her pre-existing condition and pain from the surgery done to treat that condition.

The WCJ credited the testimony of Dr. Kirkpatrick, who opined, within a reasonable degree of medical certainty, that Claimant was fully recovered from her work injury and did not require any work restrictions or medical treatment as of August 13, 2018. He testified that there were "no objective findings" of a right wrist strain at her physical examination. N.T., 12/6/2018, at 16; R.R. 239a. Though Claimant had ongoing symptoms,

> there was no evidence of any traumatic injuries, specifically to the wrist, that [would] [have] been leading to her described symptoms. It was my opinion that the symptoms that she did describe when I saw her were related to her post-operative changes and her ulnocarpal impaction, largely--probably more the post-operative changes relating to scarring, et[.] cetera.

8

But otherwise, *there was no evidence of any ongoing post-traumatic concern related to the work injury*.

N.T., 12/6/2018, at 17; R.R. 240a (emphasis added). Dr. Kirkpatrick's credited testimony satisfied Employer's burden.

In her second issue, Claimant contends that the WCJ erred by not amending the NCP to include a TFCC tear and ulnocarpal impaction syndrome, about which the WCJ made no express findings. Claimant contends that the evidence required the WCJ to amend the NCP in accordance with Section 413 of the Act.[3]

Claimant's pre-existing condition is not in dispute. Dr. Sibley's own notes stated that cartilage changes and bone edema were present in the 2015 MRI, and Dr. Sibley described the wrist condition as "chronic, acute or subacute." N.T., 4/5/2019, at 26; R.R. 102a. Dr. Kirkpatrick explained that Dr. Sibley's findings were "chronic findings, meaning that [Claimant] had evidence of ulnocarpal impaction in the right wrist" and a central tear of the TFCC ligament. N.T., 12/6/2018, at 14-15; R.R. 237a-38a. Dr. Kirkpatrick opined that the second surgery "related to the ulnocarpal impaction, which [we have] seen was a pre-existing condition and which was also recognized by Dr. Sibley as a pre-existing condition prior to the work injury of 2017." N.T., 12/6/2018, at 22; R.R. 245a.

---

[3] It states as follows:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the [D]epartment, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. §771.

9

The WCJ relied on Dr. Kirkpatrick's testimony to find that Claimant's surgeries addressed her pre-existing condition, not her work injury. Claimant's contention that the NCP should have been amended to include the TFCC tear and ulnocarpal syndrome lacks support in the record.

Based on the foregoing, we affirm the adjudication of the Board.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Sweitzer,                          :
                Petitioner        :
                             :
        v.                          :   No. 847 C.D. 2020
                             :
Workers' Compensation Appeal         :
Board (Lehigh Valley Physicians       :
Group),                                    :
                Respondent        :

## ORDER

        AND NOW, this 30th day of April, 2021, the adjudication of the Workers' Compensation Appeal Board dated August 5, 2020, is hereby AFFIRMED.

                      _____

                      MARY HANNAH LEAVITT, President Judge Emerita